# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 27, 2014        Decided January 20, 2015

No. 13-1304

MARY V. HARRIS FOUNDATION,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

HOLY FAMILY COMMUNICATIONS, INC.,
INTERVENOR

———

On Appeal of an Order of the
Federal Communications Commission

———

*Donald E. Martin* argued the cause and filed the briefs for appellant.

*Matthew J. Dunne*, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were *Jonathan B. Sallet*, Acting General Counsel, *David M. Gossett*, Acting Deputy General Counsel, and *Richard K. Welch*, Deputy Associate General Counsel. *Jacob M. Lewis*, Associate General Counsel, entered an appearance.

*Denise B. Moline* was on the brief for intervenor Holy Family Communications, Inc. in support of appellee.

Before: HENDERSON, *Circuit Judge*, and GINSBURG and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: The Mary V. Harris Foundation (MVH) and Holy Family Communications, Inc. each applied to the Federal Communications Commission for a license to operate a noncommercial educational radio station in the vicinity of Buffalo, New York, requiring the Commission to decide between the two. To do so, the agency used its comparative selection criteria, which it had promulgated through a notice-and-comment rulemaking. By a faithful application of those criteria, the Commission found Holy Family had the superior application and awarded it the license. MVH appeals that decision, arguing that the criterion upon which the outcome turned, *viz.*, the weight given to an applicant's plan to broadcast to underserved populations, either violates the Communications Act of 1934, which requires the Commission to distribute licenses fairly, or is arbitrary and capricious, in violation of the Administrative Procedure Act. MVH also appeals the agency's refusal to waive application of the selection criteria.

Because the disputed criterion is part of a reasonable framework for achieving goals consistent with the Commission's statutory mandate, and because MVH offers no support for a waiver except that it came close to the threshold it needed to get the license, we affirm the decision of the Commission.

## I. Background

When multiple applicants seek mutually exclusive licenses to operate a noncommercial educational (NCE) radio station, the Commission's choice between them turns first upon the extent to which their proposals would increase the access of underserved populations to NCE broadcasting service. 47 C.F.R. § 73.7002. It does so pursuant to the "fair distribution" mandate in section 307(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 307(b), which instructs "the Commission [to] make such distribution of licenses ... among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same."

Prior to 1995, when faced with mutually exclusive applications for an NCE license, the Commission implemented this mandate through a comprehensive review of the applicants' proposals in extended "comparative hearings." Because this method proved inefficient and impermissibly subjective, the Commission conducted a rulemaking proceeding to revise the NCE comparative selection process. *In re Reexamination of the Comparative Standards for Noncommercial Educational Applicants*, Report & Order, 15 FCC Rcd. 7386 (2000) [hereinafter *NCE Order*]. Under the newly promulgated selection process, the Commission first applies the objective Fair Distribution Rule:

1) An applicant will receive the license if at least 10% of all the people it proposes to reach will receive their first or second reserved channel NCE service, as long as the absolute number of people newly to receive first or second service is at least 2,000.

2) If more than one applicant meets the 10% threshold, then the applicant proposing to provide first or

second service to more people will receive the license, as long as the difference amounts to at least 5,000 people.

3) If the difference does not amount to 5,000 people, then all the applicants meeting the 10% threshold will be compared according to other criteria. If no applicant meets the threshold, then no preference will be awarded and all applicants will be compared according to other criteria.

*See* 47 C.F.R. § 73.7002. If the Fair Distribution Rule is not dispositive, then the Commission compares NCE applicants by awarding points for (1) continuity of local ownership, (2) having diverse ownership, (3) operating a statewide network that provides programming to accredited schools, and (4) proposing to broadcast to a larger area and population than other applicants. *See* 47 C.F.R. § 73.7003.

Holy Family and MVH each applied to the Commission to broadcast NCE programming to the greater Buffalo, New York area. Holy Family would reach 88,434 people, 5.53% (or 4,886) of whom were receiving only one NCE service, and MVH would reach 300,673 people, 9.46% (or 28,453) of whom were receiving only one NCE service. Accordingly, neither applicant received a dispositive preference under the Fair Distribution Rule because neither reached the 10% threshold, even though MVH proposed to serve approximately 23,500 more underserved people than did Holy Family. When it went on to compare the two applicants under the point system, the Commission tentatively selected Holy Family. That decision was announced in a 2007 order that also resolved a number of other application contests. *See In re Comparative Consideration of 76 Groups of Mutually Exclusive Applications for Permits to Construct New or*

*Modified Noncommercial Educational FM Stations*, 22 FCC Rcd. 6101, 6167, ¶ 230 (2007) [hereinafter *Omnibus Order*].

MVH petitioned the Media Bureau of the Commission to deny Holy Family's application because, in addition to reasons not relevant to this appeal, Holy Family's proposal was "far inferior to MVH's proposal in terms of the fair distribution of service." MVH therefore asked the Bureau to grant it a fair distribution preference despite falling short of the 10% threshold because "[s]lavish adherence" to the Fair Distribution Rule yielded an unintended consequence in this case. The Bureau denied that aspect of the petition, explaining in its Letter Decision that the threshold is necessary "to ensure that only the most significant differences would be decisional" and that comparative differences not reaching this level of significance are taken into account in the points awarded for an applicant reaching a larger area and population. 22 FCC Rcd. 18931, 18935 (2007) [hereinafter *Letter Decision*]. It also cited a recent decision of the Commission denying a waiver to an applicant that would have brought first or second service to 9.33% of its population, approximately 25,000 people. *Id.* at 18934. The Bureau later denied MVH's request for reconsideration because MVH did no more than "reassert[] points that it made previously." *In re Application of Holy Family Commc'ns, Inc.*, Mem. Op. & Order, 26 FCC Rcd. 12791, 12792, ¶ 4 (2011). MVH then applied to the Commission for review, arguing the 10% threshold is arbitrary and the Commission should waive it in recognition of the superiority of MVH's proposal in achieving a fair distribution of NCE service. The Commission denied review, stating only that it agreed with the reasoning of the Media Bureau. *In re Holy Family Commc'ns, Inc.*, Mem. Op. & Order, 28 FCC Rcd. 4854, 4854, ¶ 2 (2013) [hereinafter *Final Order*].

MVH now appeals the Commission's decision under 47 U.S.C. § 402(b)(1), which statute allows an applicant for a station license to appeal the denial of its application directly to this court. Holy Family has intervened in support of both the Fair Distribution Rule and the Commission's denial of a waiver.

## II. Analysis

MVH argues the Fair Distribution Rule is an impermissible basis for the Commission's decision because the 10% threshold fails to implement the statutory requirement for "fair, efficient, and equitable distribution of radio service" and because it is arbitrary and capricious. MVH also argues that, even if the Rule survives scrutiny, as applied in this case the result is inconsistent with achieving a fair distribution, wherefore the Commission abused its discretion by denying MVH's waiver request.

## A. The 10% Threshold Is Permissible Under the Statute

MVH first argues the 10% threshold is inconsistent with the Commission's statutory obligation to "provide a fair, efficient, and equitable distribution of radio service." It points out that the Commission's historical approach to achieving a fair distribution was to compare the absolute numbers of underserved people, not the percentages of the total populations, that the applicants would serve. What the Commission did in the past is of no moment, however, if its current approach reflects a permissible interpretation of the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 863-64 (1984) ("An initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy

on a continuing basis."); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("[W]e fully recognize that regulatory agencies do not establish rules of conduct to last forever and that an agency must be given ample latitude to adapt their rules and policies to the demands of changing circumstances." (citations and internal quotation marks omitted)). An agency must nevertheless "display awareness that it *is* changing position"; it cannot "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). This does not, however, equate to a "heightened standard" for reasonableness. *Id.* at 514. The agency need only show "that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better." *Id.* at 515.

At oral argument, MVH clarified its position; it contended the only acceptable rule under the statute would be one that granted the license to whichever applicant would provide first or second service to more people. Nothing in the text or history of the statute could possibly be read to require that specific approach.

Applying the familiar two-step framework of *Chevron*, we ask first whether in § 307(b) the Congress addressed and hence foreclosed the question here in dispute. *See* 467 U.S. at 843 (agency "must give effect to the unambiguously expressed intent of Congress"). Section 307(b) was enacted to redress the "[c]oncentration of radio service in the big city" at the expense of service to "sparsely populated areas." *Pasadena Broad. Co. v. FCC*, 555 F.2d 1046, 1050 (D.C. Cir. 1977) (internal quotation marks omitted). There can be no doubt, however, that the Congress left it to the agency to decide how best to pursue this goal: The litany "fair,

efficient, and equitable" indicates the Congress delegated to the Commission the task of balancing myriad considerations that neither body could fully anticipate. *See Alvin Lou Media, Inc. v. FCC*, 571 F.3d 1, 11 (D.C. Cir. 2009) ("The text of § 307 is silent regarding ... what the Commission should consider in making § 307(b) determinations). Indeed, § 307(b) was given its present form in 1936 precisely in order to replace the rigid head counting scheme the Congress had imposed upon the agency in a 1935 amendment, and to restore the discretionary approach of the original Communications Act of 1934. *See Pasadena Broad.*, 555 F.2d at 1050 ("The purpose of this reversion was [in part] to loose the Commission from the fetters imposed by the quota system"). By eschewing a more prescriptive test, the Congress clearly authorized the Commission to decide what factors would be dispositive in expanding access to radio service. *See Alvin Lou Media*, 571 F.3d at 11 ("The absence of statutory procedural mandates supports the conclusion that the Commission's ... procedures ... do not conflict with § 307(b)").

Turning to step two of the *Chevron* framework, we ask whether the agency's interpretation of § 307(b) in this case is a "permissible" one. 467 U.S. at 843. MVH contends that whatever "fair, efficient, and equitable distribution" means, it must include selecting an applicant that will bring second service to 23,500 more people than would another applicant. Sensible as that proposition may seem at first blush, its appeal fades when one recalls that the statute requires the Commission to ensure access to radio service not only for underserved people but in particular for underserved people in sparsely populated areas. The percentage of the total broadcast population receiving first or second NCE service is a reasonable proxy for whether the station targets a sparsely populated area. The 10% threshold ensures that stations

targeted at big cities do not win a decisive preference by virtue of incidentally covering pockets of underserved people who reside in a generally well-served community, as illustrated below.



Applicant A would reach 5,000 underserved persons in a rural community, which is 50% of its total and qualifies it for the fair distribution preference.

Existing service

Applicant B would reach 8,000 underserved persons in a well-served community, which is less than 10% of its total.

Moreover, there is nothing in § 307(b) that suggests people already receiving one NCE broadcast must be considered underserved or given a preference at all. Should people receiving two NCE broadcasts be designated underserved? What about a community receiving several commercial broadcasts but no NCE broadcasts? These are judgments the Congress delegated to the Commission, not to the courts. It is therefore well within the Commission's discretion to award preferences for fair distribution in a manner that provides an incentive for applicants to expand service to sparsely populated areas even though it will occasionally result in the Commission awarding an NCE license to an applicant that will provide second NCE service to fewer people than would a competing applicant.

MVH also contends the 10% threshold violates the fair distribution mandate of § 307(b) because it might cause an applicant to reduce its total population served – an otherwise

undesirable goal – in order to increase the percentage of people in its proposal receiving first or second service. The selection criteria that are applied if the Fair Distribution Rule is not dispositive prevent that unintended consequence, however, by providing comparative points for applicants covering larger areas and populations. 47 C.F.R. § 73.7003(b)(4). MVH also suggests an applicant might understate its intended area of service when applying to the Commission "and later enlarge the service area after the construction permit is issued." Again, however, the points gained for proposing a larger and more populous service area – and hence lost to an applicant proposing a smaller and less populous area – make this gamesmanship unlikely. In any event, a provision in the Fair Distribution Rule itself probably prohibits this result: "For a period of four years of on-air operations, an applicant receiving a decisive preference pursuant to this section is required to construct and operate technical facilities substantially as proposed ...." 47 C.F.R. § 73.7002(c).

Accordingly, MVH cannot escape the Rule on the ground that it conflicts with the § 307(b) mandate for a "fair, efficient, and equitable distribution of radio service."

B. The 10% Threshold Is Not Arbitrary and Capricious

MVH next argues the Fair Distribution Rule is arbitrary and capricious because the Commission did not provide a reasoned explanation for the 10% threshold either during the notice-and-comment process or in the Omnibus Order applying the selection criteria to particular cases, including this one. Indeed, MVH characterizes the Fair Distribution Rule as a departure from the "long-standing policy" of case-by-case analysis with no qualifying threshold. As evidence of the Commission's failure of reasoned decision making, MVH

points out that the agency, in proposing to adopt a rule, never said it was considering a minimum percentage of people receiving first or second service as a prerequisite for receiving a preference for fair distribution and therefore did not benefit from the comments that applicants would have offered in response. Presumably because the time has passed for a procedural challenge to the rule, MVH couches this argument as an objection to the reasoning underlying the substance of the Rule and not to the notice-and-comment process by which the Rule was promulgated. MVH further claims the decision to impose a threshold for eligibility to receive a fair distribution preference "lacked any support in the rulemaking record" because the only commenter that mentioned such a threshold suggested a 5% level.

Although the Commission must "articulate a satisfactory explanation for its action" when it changes course, *State Farm*, 463 U.S. at 43, there is no requirement that the explanation derive from the comments it receives. In adopting the Fair Distribution Rule and applying it to MVH, the agency fully explained its reason for departing from its long-standing case-by-case approach.

More specifically, the Commission explained the new Rule would "eliminate the vagueness and unpredictability of the [previous] system," *NCE Order*, 15 FCC Rcd. at 7394, ¶ 18, and with reference to the goal of fair distribution in particular, it explained that it sought "to evaluate applications quickly, with minimal burden on applicants and on the staff," *id.* at 7395, ¶ 21. Moreover, contrary to MVH's description, the Commission did draw support for an objective approach from the comments of interested parties. It specifically mentioned commenters' "concern[s] that the population receiving a first or second service be of a sufficient size to be meaningful," that the Commission "define what constitutes a

significant population receiving first or second service," and that its "calculations ... be consistent." *Id.* at 7396, ¶ 23.

Next, in response to another applicant's argument that it should receive a fair distribution preference despite falling only slightly short of the 10% threshold, the Commission explained in the Omnibus Order how the threshold encourages the fair distribution of NCE licenses: "In well-populated service areas such as [the applicant's], the ten percent component ensures that Section 307(b) eligibility is limited to NCE applicants offering new service to a significant portion of the relatively large population." 22 FCC Rcd. at 6114, ¶ 30. This explanation echoed the reason the Commission gave in the NCE Order for choosing a 10% threshold rather than the 5% threshold one commenter had suggested: "We generally concur with this suggestion ... but believe that the percentage difference in population coverage must be greater if it is to distinguish between applicants in well populated areas, as a threshold matter." 15 FCC Rcd. at 7397, ¶ 25.

The Commission also explained that the selection criteria take account of the absolute difference in the scale of proposed service areas. *See Omnibus Order*, 22 FCC Rcd. at 6114, ¶ 29. That is, where, as here, there is not a dispositive preference for an applicant providing first or second service to more than 10% of its total population, an applicant that would increase first or second service as a result of serving a larger area with more people overall can receive a comparative advantage as part of the point system for its superior scale. The Commission's NCE selection criteria therefore advance the goal of expanding service even when an applicant covers a large absolute number of underserved people but that number is less than 10% of the total population to be served. This is the same explanation that the Media Bureau provided when

MVH petitioned to deny Holy Family's tentative selection as licensee. *See Letter Decision*, 22 FCC Rcd. at 18934-35.

In sum, the Commission adequately explained the purpose of the 10% threshold and the NCE selection criteria overall. Those criteria therefore provided a permissible foundation for the Commission to decide between the applications of MVH and Holy Family.

C. The Commission Did Not Abuse Its Discretion by Denying MVH's Waiver Request

Lastly, MVH argues the Commission should have made an exception to the Fair Distribution Rule in its case. The Commission may, in its discretion, grant a request to waive a rule if:

(i) The underlying purpose of the rule(s) would not be served or would be frustrated by application to the instant case, and ... a grant ... would be in the public interest; or

(ii) In view of unique or unusual factual circumstances ..., application of the rule(s) would be inequitable, unduly burdensome or contrary to the public interest, or the applicant has no reasonable alternative.

47 C.F.R. § 1.925(b)(3). Our review of the Commission's denial of a waiver is "extremely limited," *Blanca Tel. Co. v. FCC*, 743 F.3d 860, 864 (D.C. Cir. 2014); *see also id.* ("We will vacate the denial of a waiver only when the agency's reasons are so insubstantial as to render that denial an abuse of discretion." (internal quotation marks omitted)), because the agency, as the author of the policy embodied in its rule, is the appropriate body to determine whether a situation presents

unanticipated circumstances that make it more appropriate to create an exception than to apply the rule. MVH argues the Commission abused its discretion when it refused to waive the Fair Distribution Rule because the fair distribution policy underlying the Rule would be better served by MVH than by Holy Family. It also claims the Commission did not explain its decision to deny the waiver.

The Commission did explain its decision by explicitly adopting the Media Bureau's reason for denying the waiver. *Final Order*, 28 FCC Rcd. at 4854, ¶ 2. The Bureau in turn had explained it was following one of the Commission's decisions in the Omnibus Order. *Letter Decision*, 22 FCC Rcd. at 18934. There an applicant to serve a population 9.33% of whom would receive first or second service had argued the new 10% threshold should not be applied to it because its underserved population, although less than 10% of its total population, was much larger than the underserved populations that the rival applicants proposed to serve. *Omnibus Order*, 22 FCC Rcd. at 6113-14, ¶¶ 28-30. The Commission denied that request for a waiver because, in its view, adhering to the threshold was necessary in order to encourage applicants to expand service to communities non-contiguous to well-populated areas, as explained in Part II.B above. *See id* at 6114, ¶ 30.

An agency does not abuse its discretion by applying a bright-line rule consistently in order both to preserve incentives for compliance and to realize the benefits of easy administration that the rule was designed to achieve. *See Comcast Corp. v. FCC*, 526 F.3d 763, 767 (D.C. Cir. 2008) (affirming denial of waiver in part because consistent application was necessary to preserve "providers' incentive" to comply with the policy); *Turro v. FCC*, 859 F.2d 1498, 1500 (D.C. Cir. 1988) ("[S]trict adherence to a general rule

may be justified by the gain in certainty and administrative ease, even if it appears to result in some hardship in individual cases"). The Commission's decision not to waive the threshold cutoff despite MVH just barely missing it was, therefore, not an abuse of discretion.

## III. Conclusion

In sum, the Commission's selection of Holy Family's application over MVH's pursuant to its Fair Distribution Rule was not inconsistent with either § 307(b) of the Communications Act or the prohibition of arbitrary and capricious decision making in § 706 of the APA. When the Commission declined to waive that rule, it neither failed to explain that decision nor abused its discretion. Accordingly, the decision of the Commission is

*Affirmed.*