*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 14-AA-0623 & 14-AA-0636

MICHAEL JOSEPH LEVY, PETITIONER/CROSS-RESPONDENT,

&

CARMEL PARTNERS, INC. D/B/A QUARRY II, LLC, RESPONDENT / CROSS-PETITIONER,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, RESPONDENT.

On Petition and Cross-Petition for Review of a Decision and Order of the
District of Columbia Rental Housing Commission
(RH-TP-06-28,830 & RH-TP-06-28,835)

(Argued September 22, 2015                    Decided November 19, 2015)

Michael Joseph Levy, pro se.

*Debra F. Leege*, with whom *Richard W. Luchs* was on the brief, for Respondent/Cross-Petitioner.

*James C. McKay, Jr.*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for Respondent.

Before THOMPSON, EASTERLY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Petitioner/cross-respondent Michael Joseph Levy and respondent/cross-petitioner Carmel Partners, Inc., d/b/a Quarry II, LLC, seek review of a decision by respondent District of Columbia Rental Housing Commission ("RHC"). In that decision, the RHC concluded that Quarry had not timely notified Mr. Levy that his apartment was exempt from statutory rent control before increasing Mr. Levy's monthly rent. The RHC therefore voided Quarry's claimed exemption, awarded Mr. Levy a rent refund, and reduced Mr. Levy's monthly rent to its prior level. In this court, Quarry argues that the RHC misinterpreted the Rental Housing Act in voiding the exemption, while Mr. Levy argues that the RHC failed to provide him an adequate opportunity to submit evidence of the full extent of his damages. We affirm.

**I.**

In 1995, Mr. Levy and a prior owner signed a six-month lease for rental of a basement apartment in a multi-unit building. The lease provided that after the initial term expired Mr. Levy could retain possession as a month-to-month tenant. When Quarry acquired the building in 2004, Mr. Levy apparently was a month-to-month tenant.

The Rental Housing Act of 1985, D.C. Code § 42-3501.01 et seq. (2012 Repl.), regulates the rental rate landlords can charge for covered housing units. Certain rental units, however, are exempt from the Act's rent-control provisions, including those that were "added to an existing structure or housing accommodation and covered by a certificate of occupancy for housing use issued after January 1, 1980." D.C. Code § 42-3502.05 (a)(2).

Before raising the rental rate on an exempt unit, the housing provider must file a claim of exemption with the Rent Administrator. 14 DCMR § 4101.3 (a) (2015). Additionally, "prior to or simultaneously with the filing," the housing provider must either mail a copy of the claim of exemption to each affected tenant or post a copy at the affected rental unit. *Id.* at § 4101.6. Unless and until a housing provider complies with those requirements, the provider "shall not be eligible for . . . [a]ny of the benefits which accrue to the housing provider of rental units exempt from" the Act. *Id.* at § 4101.9 (c).

Mr. Levy's apartment was added to the apartment building in 1981, when a prior owner of the building converted the basement into new apartments. Because the certificate of occupancy for the apartments was issued after January 1, 1980, Mr. Levy's apartment was eligible for an exemption from the Act's rent-control

provisions. D.C. Code § 42-3502.05 (a)(2). When Quarry acquired the building in 2004, however, no claim of exemption had been filed with the Rent Administrator regarding Mr. Levy's apartment. Thus, the rental rate for Mr. Levy's unit was still subject to rent control under the Act.

In 2005, Quarry filed a claim of exemption. Quarry did not provide Mr. Levy with notice of the claim of exemption until almost a year and a half after the filing of the claim of exemption, in August 2006, when Quarry sent a letter to Mr. Levy enclosing a copy of the claim of exemption and stating that the apartment was exempt from rent control. Two weeks later, Quarry sent a second letter, reiterating that the apartment was exempt from rent control and notifying Mr. Levy that his monthly rent would increase from $718 to $1250 as of October 1, 2006.

In November 2006, Mr. Levy filed two petitions alleging among other things that Quarry had failed to provide Mr. Levy with timely notice of the claim of exemption. Mr. Levy asked that Quarry's exemption be revoked, that Quarry refund the difference between Mr. Levy's $1250 monthly payments and the previous $718 monthly rent, and that any future rent increases be consistent with the Act.

In June and July 2007, an Administrative Law Judge ("ALJ") held two evidentiary hearings on Mr. Levy's consolidated petitions. In a post-hearing pleading, Mr. Levy submitted among other things a copy of an October 2007 notice of rent increase. In December 2008, the ALJ issued a final order concluding that Quarry's exemption was valid and dismissing all of Mr. Levy's claims. Mr. Levy appealed to the RHC. Before the RHC's hearing on Mr. Levy's appeal, Mr. Levy mailed to the RHC a copy of a January 2009 notice of rent increase.

In August 2008, while Mr. Levy's 2006 petitions were still pending before the ALJ, Mr. Levy filed another petition, alleging that Quarry had substantially reduced or eliminated facilities and services at Mr. Levy's building and that Quarry had retaliated against Mr. Levy in violation of the Act. That petition was set to be heard by a different ALJ. In January 2010, while Mr. Levy's appeal relating to the 2006 petitions was pending before the RHC, the second ALJ dismissed the 2008 petition with prejudice, concluding among other things that Quarry's claim of exemption was valid as of 2006. Mr. Levy did not appeal from that decision, and neither party notified the RHC of that decision.

In March 2012, the RHC issued a decision with respect to the 2006 petitions, concluding that Quarry had violated the Act by failing to give Mr. Levy timely

notice of the claim of exemption. The RHC therefore concluded that the claimed exemption was void ab initio and remanded the case for further proceedings.

On remand, the ALJ issued a final order in August 2012, holding that Quarry had not given Mr. Levy adequate notice of the claim of exemption, that the claimed exemption was void, that Mr. Levy's apartment was still subject to rent control under the Act, and that the August 2006 rent increase was therefore unlawful. The ALJ ordered that Quarry reduce Mr. Levy's rent to $718 per month (the pre-October 2006 rental rate) and that Quarry refund to Mr. Levy overpaid rent between October 1, 2006 (the date of the unlawful rental increase) and July 13, 2007 (the date of the last evidentiary hearing), for a total of $5,011.10 plus interest.

Both parties appealed to the RHC. Quarry argued that the rent reduction violated the Act's three-year statute of limitations, D.C. Code § 42-3506 (e); that the RHC should give preclusive effect to the second ALJ's holding, in denying the 2008 petition, that the claim of exemption was valid; and that in any event the apartment was properly subject to an exemption under the Act. Mr. Levy argued that the RHC's prior decision had implicitly required the first ALJ to hold a new evidentiary hearing on the total extent of damages Levy suffered, including rental

payments made after the last evidentiary hearing. Mr. Levy presented to the RHC the same January 2009 notice of rent increase he had submitted during the pendency of his first appeal.

The RHC issued its decision in 2014. Addressing Quarry's claims, the RHC first concluded that the rent reduction did not violate the Act's statute of limitations, because Mr. Levy had filed the 2006 petitions within three years of the challenged rent increase. The RHC also declined to give preclusive effect to the ALJ's ruling with respect to the 2008 petition, because Quarry had not raised the issue of preclusion at any previous stage of the proceedings. Finally, the RHC determined that the law-of-the-case doctrine precluded reconsideration of the RHC's earlier ruling that Quarry's failure to give Mr. Levy timely notice of the claim of exemption rendered the claim of exemption void.

As to Mr. Levy's claims, the RHC explained that its prior decision did not require the ALJ on remand to hold an additional hearing on damages. Moreover, the RHC noted that it has consistently permitted an award of damages only "up to, and including, the date of the final evidentiary hearing." Finally, the RHC did not sua sponte remand to the ALJ for another evidentiary hearing or consider on appeal new evidence of Mr. Levy's damages.

**II.**

"Our role in reviewing agency decisions is a limited one." *Jerome Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n*, 682 A.2d 178, 181 (D.C. 1996). We normally defer to the agency's decision "so long as it flows rationally from the facts and is supported by substantial evidence." *American Broad. Co. v. District of Columbia Dep't of Emp't Servs.*, 822 A.2d 1085, 1089 (D.C. 2003). This Court will defer to an agency's reasonable interpretation of ambiguous language in a statute that the agency administers. *Morpho Trust USA, Inc. v. District of Columbia Contract Appeals Bd.*, 115 A.3d 571, 583 (D.C. 2015); *see also, e.g.*, *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 403 (2008) ("Filling . . . gaps in ambiguous statutes involves difficult policy choices that agencies are better equipped to make than courts.") (brackets and internal quotation marks omitted). We also give "considerable deference" to the RHC's interpretation of the RHC's implementing regulations. *Sawyer Prop. Mgmt. of Md., Inc. v. District of Columbia Rental Hous. Comm'n*, 877 A.2d 96, 102 (D.C. 2005).

**A.**

Quarry first challenges the RHC's conclusion, in reliance on 14 DCMR § 4101.6, that Quarry's claim of exemption was void ab initio because Quarry failed to provide Mr. Levy with notice of the claim "prior to or simultaneously with" the filing of the claim. Quarry does not dispute that it failed to give Mr. Levy prior or simultaneous notice of the filing of the claim of exemption.[1] Rather, Quarry contends that (1) the Act does not require that the notice of a claim of exemption be given prior to or contemporaneously with the filing of the claim of exemption; (2) the Act does not state that the failure to provide such notice renders a claim of exemption void ab initio; (3) section 4101.6, as interpreted by the RHC, is contrary to the Act and unreasonable; and (4) the RHC's interpretation of section 4101.6 in this case impermissibly conflicts with prior decisions of this court and the RHC.

---

[1] The Act does not appear to explicitly require filing of a claim of exemption with respect to rental units exempt from rent control under D.C. Code § 42-3502.05 (a)(2). The Act does explicitly require that a "prospective tenant" must be given notice that a rental unit is exempt from rent control "[p]rior to the execution of a lease or other rental agreement." D.C. Code § 42-3502.05 (d). Quarry was required by regulation, however, to file a claim of exemption with the Rent Administrator. 14 DCMR § 4106.1 (2015). Quarry does not challenge that requirement, nor does Quarry dispute that it was required to provide Mr. Levy with notice of the claim of exemption at some point before increasing Mr. Levy's rent. We therefore limit our discussion to the question whether the RHC permissibly treated Quarry's claim of exemption as void ab initio because Quarry did not serve Mr. Levy before or simultaneously with the filing of the claim.

We uphold section 4101.6 as interpreted and applied by the RHC in this case. Taking as a given that Quarry was required to give Mr. Levy notice of the claim of exemption at some point, see supra note 1, we view section 4101.6's timing requirement as reasonable and within the RHC's authority. The Act explicitly requires housing providers to give "notice in writing" of a unit's exempt status to prospective tenants before the signing of a lease. D.C. Code § 3502.05 (d). That provision supports the RHC's contention that the Act is intended to provide tenants with early notice that a unit is exempt from rent control. Promptly informing tenants that their landlord claims that a unit is exempt both permits timely challenges by tenants and provides tenants with the ability to make decisions in advance about whether to remain in a unit or begin to look elsewhere.

We also view as reasonable the RHC's interpretation of section 4101.6 as rendering an untimely notice void ab initio. Notice of a claim of exemption long after the claim is filed can thwart the purposes of the notice requirement, by foreclosing prompt challenges to the claim and by preventing tenants from planning and preparing for possible rent increases. In principle, the RHC could have adopted a less categorical approach, deeming untimely notices to be effective

unless the tenant was prejudiced by the untimeliness. As the RHC points out, however, considerations of administrative efficiency provide support for a bright-line rule rather than an approach that requires case-specific inquiries into prejudice. *See Mary V. Harris Found. v. FCC*, 414 U.S. App. D.C. 21, 28, 776 F.3d 21, 28 (2015) ("An agency does not abuse its discretion by applying a bright-line rule consistently in order both to preserve incentives for compliance and to realize the benefits of easy administration that the rule was designed to achieve.").

Quarry suggests, however, that the RHC's interpretation of section 4101.6 is unreasonable, because under that interpretation a landlord who fails to provide notice of a claim of exemption before or simultaneously with the filing of the claim forever loses the ability to file for an exemption. The RHC expressly disavows such an interpretation, however, explaining that in its view a housing provider can simply file a new claim of exemption and give timely notice of that filing.[2]

Thus, we conclude that section 4101.6, as interpreted by the RHC in this case, reasonably advances the dual goals of administrative efficiency and procedural fairness reflected in the Act. *Cf. Charles E. Smith Mgmt., Inc. v.*

---

[2] Mr. Levy to a degree disputes the RHC's position on that issue, contending that D.C. Code § 42-3502.05 (d) precludes a unit from being exempted from rent control in the middle of a tenancy. We have no occasion in this case to address that issue. See infra note 4.

*District of Columbia Rental Hous. Comm'n*, 492 A.2d 875, 878 (D.C. 1985) (noting that Act's "registration measures for landlords and accompanying tenant monitoring provisions . . . play an essential role in ensuring compliance with the rent laws"); *Temple v. District of Columbia Rental Hous. Comm'n*, 536 A.2d 1024, 1037 n.21 (D.C. 1987) (RHC has "substantial interests in the efficient administration of the rental housing laws").

We also conclude that the disputed aspects of section 4101.6 are within the scope of the RHC's rulemaking authority. The Act confers on the RHC "express power to promulgate rules and procedures that will effectuate the administration of rental housing laws." *Sawyer*, 877 A.2d at 106 (citing D.C. Code § 42-3502.02 (a)(1)). Accordingly, we have upheld RHC regulations that fill gaps in the Act and that are "necessary for [the] proper and efficient administration of the Act and help[] to effectuate its purposes." *Dorchester House Assocs. v. District of Columbia Rental Hous. Comm'n*, 938 A.2d 696, 705 (D.C. 2008) (as amended on reh'g). For example, in *Dorchester House*, we reviewed an RHC regulation that treated petitions to increase rent ceilings as petitions to increase rent, which require housing providers to demonstrate substantial compliance with housing regulations. Although the Act did not explicitly require a showing of substantial compliance for petitions to increase rent ceilings, we upheld the regulation as "a rational exercise

of [RHC's] authority as an overseer of the Act." *Id.* at 705 (internal quotation marks omitted). We reach a similar conclusion as to section 4101.6, which in the respects at issue in this case simply selects the time at which notice must be given and determines the consequences of a failure to provide timely notice.

Quarry argues, however, that the RHC's decision in this case conflicts with our decisions in *Seman v. District of Columbia Rental Housing Commission*, 552 A.2d 863 (D.C. 1988), and *Revithes v. District of Columbia Rental Housing Commission*, 536 A.2d 1007 (D.C. 1990). We disagree. In neither of those cases did the parties dispute the timeliness of notice of a claim of exemption, and this court therefore did not address the issue. *See, e.g.*, *In re Q.B.*, 116 A.3d 450, 455 (D.C. 2015) ("[S]tare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question.") (internal quotation marks omitted).

Finally, we do not agree with Quarry's claim that the RHC's interpretation of section 4101.6 in this case contradicts prior RHC decisions. In none of the decisions on which Quarry relies did the RHC expressly conclude that a claim of exemption was valid despite the housing provider's failure to provide timely notice of the claim as required by section 4101.6. *See, e.g.*, *Young*, TP 21,976, 1992 D.C.

Rental Housing Comm. LEXIS 196, at *3 (RHC Jan. 28, 1992) (failure to give "timely notice . . . by posting or by mail" not remedied when tenant "belatedly learn[s] that a claim of exemption was filed"); *Chaney*, TP 20,347, 1989 D.C. Rental Housing Comm. LEXIS 340, at *2 (RHC March 24, 1989) ("The failure to notify the tenant makes the claim of exemption void until proper notification is given."). We see no conflict between the RHC's prior application of section 4101.6 and RHC's application of that provision in this case.

In sum, we are satisfied that section 4101.6, as interpreted and applied by the RHC in this case, is not "unreasonable or in contravention of the language or legislative history of the statute and[] regulation[]." *Foggy Bottom Ass'n v. District of Columbia Zoning Comm'n*, 979 A.2d 1160, 1167 (D.C. 2009); *see also 1330 Conn. Ave., Inc. v. District of Columbia Zoning Comm'n*, 669 A.2d 708, 714-15 (1995) ("When the construction of an administrative regulation rather than a statute is at issue, deference is even more clearly in order.") (internal quotation marks omitted). We therefore uphold the RHC's conclusion that Quarry's failure to provide Levy with a copy of the claim of exemption prior to or simultaneously with the filing rendered the claim of exemption void ab initio.

**B.**

Quarry further argues that the Act's three-year statute of limitations precluded the ALJ from reducing Mr. Levy's rent to the pre-October 2006 rate. We conclude otherwise.

The Act's statute of limitation provides that "[n]o petition may be filed with respect to any rent adjustment . . . more than 3 years after the effective date of the adjustment . . . ." D.C. Code § 42-3502.06 (e). Mr. Levy filed the petitions in this case in November 2006, less than two months after the rent increase at issue. Under the plain language of the Act, Mr. Levy's petitions were timely. Quarry points out, however, that the ALJ ordered a rent reduction to the pre-October 2006 level in August 2012. Moreover, without providing any details, Quarry claims that it had imposed other rent increases on Mr. Levy's apartment after October 2006 and more than three years before the August 2012 ruling. Thus, Quarry argues, reducing the rent to the pre-October 2006 level violated the statute of limitations by not only undoing the challenged 2006 rent increase but also undoing subsequent rent increases that Mr. Levy should no longer be permitted to challenge.

One difficulty with Quarry's argument is that both during the administrative proceedings and in this court Quarry does not appear to have identified evidence in the record of specific rent increases implemented between October 2006 and August 2009. In fact, the only specific information about such rent increases of which we are aware was presented, albeit untimely, by Mr. Levy. In a ruling that Quarry defends in this court, the RHC did not consider that information, which had not properly been presented. The absence of properly introduced evidence of post-2006 rent increases appears to explain the RHC's statement, in denying Quarry's statute-of-limitations claim, that the record reflects that "the only rent increase invalidated by the ALJ," presumably the October 2006 increase, "occurred within the three (3) years prior to the filing of the Tenant Petition."[3] Moreover, the ALJ ordered a rent refund only through July 2007, and thus did not grant monetary relief with respect to rent increases after that point. Finally, the relief granted by the ALJ did not preclude Quarry from implementing rent increases going forward by properly filing another claim of exemption and providing Mr. Levy with timely notice of that filing. Under the circumstances, and particularly given the way Quarry presented its statute-of-limitations claim to the RHC, we find that the RHC

---

[3] The ALJ further stated, and the RHC reiterated, that Quarry could charge a rent above the pre-October 2006 amount if "a proper rent increase is implemented."

reasonably concluded that the relief granted by the ALJ in this case did not violate the Act's statute of limitations.

## C.

Finally, Quarry argues that the RHC was required to give preclusive effect to the unappealed ALJ ruling that denied Mr. Levy's 2008 petition. The RHC declined to consider that argument on the merits, concluding that Quarry defaulted the argument by failing to present it at any point before the second appeal to the RHC. We uphold the RHC's decision to treat the claim as defaulted. Although the allegedly preclusive order was issued in 2010, Quarry did not raise a claim of preclusion before the RHC decided the first appeal in March 2012, did not raise such a claim in its motion to reconsider the RHC's 2012 decision, and did not raise the issue before the ALJ on remand. The RHC acted well within its authority in treating Quarry's claim as defaulted because Quarry did not timely raise the claim during the administrative proceedings. *See generally, e.g.*, *Brown v. District of Columbia Dep't of Emp't Servs.*, 83 A.3d 739, 748 (D.C. 2014) ("[A]n administrative tribunal has wide latitude in adopting rules of procedure for the proceedings before it. This authority extends to rules of issue preservation and forfeiture . . . .") (footnote omitted); *Cocome v. District of Columbia Lottery &*

*Charitable Games Control Bd.*, 560 A.2d 547, 550 (D.C. 1989) (upholding agency decision that party defaulted argument by failing to present argument to initial agency decisionmaker); *cf., e.g.*, *Christoffel v. United States*, 94 U.S. App. D.C. 168, 170, 214 F.2d 265, 267 (1954) (issue raised for first time in second appeal was untimely).

## D.

We turn now to Mr. Levy's challenge to the amount of the rent refund awarded by the ALJ. As we have previously noted, the ALJ initially held evidentiary hearings in June and July of 2007. After the RHC remanded the case to the ALJ, the ALJ issued a final order without holding another evidentiary hearing. Citing 14 DCMR § 3826.2 (2015) and *Canales*, TP 27,535, 2005 D.C. Rental Housing Comm. LEXIS 339 (RHC June 29, 2005), the ALJ determined that she could only award damages based on rent payments up to and including July 13, 2007, the date of the last evidentiary hearing.

**1.**

First, Mr. Levy contests the RHC's practice of limiting damages to the date of the last evidentiary hearing. Specifically, Mr. Levy notes that neither the Act nor RHC regulations impose such a limit. Mr. Levy submits that it would be more sensible to require ALJs to infer that "rent demanded equals rent paid," absent evidence that a tenant had stopped paying rent or no longer resided at the relevant unit. Because the ALJ found that Mr. Levy had "resided in the basement apartment . . . since August 4, 1995," and because the ALJ mailed its final order after remand to Mr. Levy's apartment, Mr. Levy argues there was substantial evidence in the record to support a conclusion that Mr. Levy had overpaid rent during the period from 2007 to 2012.

Mr. Levy's argument is unavailing. Although neither the Act nor RHC regulations explicitly require that damages be calculated up to and including the date of the last evidentiary hearing, it is a basic principle of administrative law that decisions "should rest solely upon evidence appearing in the public record of the agency proceeding." *Harris v. District of Columbia Rental Hous. Comm'n*, 505 A.2d 66, 69 (D.C. 1986). RHC's approach comports with that principle, as well as

with the requirement that administrative decisions be based on substantial evidence. D.C. Code § 2–510 (a)(3)(E) (2012 Repl.).

Mr. Levy contends, however, that the RHC's approach is unreasonable because it prevents tenants from establishing the full measure of their damages in cases in which there is a delay between the evidentiary hearing and the ALJ's ruling. In support of that contention, Mr. Levy makes the reasonable point that he could not present evidence at the July 2007 hearing that did not yet exist -- namely, future rent increases and rent payments. But it does not follow that tenants in Mr. Levy's position have no way of addressing this problem. Rather, a tenant concerned about such a situation could request in advance that the ALJ convene a separate hearing on damages. Alternatively, the tenant could file a prompt motion to reopen the proceeding to more accurately establish damages. *See* 1 DCMR § 2828.5 (e) (2015) (party may seek reconsideration or new hearing where "[n]ew evidence has been discovered that previously was not reasonably available"). Finally, in this case, Mr. Levy could have raised this issue with the ALJ after remand. Given these alternatives, we uphold as reasonable the RHC's general approach of limiting damages to the date of the last evidentiary hearing.

**2.**

Second, Mr. Levy argues that the RHC should have inferred the full extent of his damages on appeal.  During both appeals to the RHC, Mr. Levy submitted documents that refer to rent increases after the July 2007 hearing.  The RHC did not consider this new evidence in either appeal, consistent with 14 DCMR § 3807.5 (2015) ("The Commission shall not receive new evidence on appeal.").[4] Mr. Levy nevertheless argues that the RHC should have awarded him a greater rent refund on appeal, based on the notices of rent increase not admitted into evidence at the hearings and the ALJ's findings that Mr. Levy continuously resided in the apartment at issue as of 2012.

_____

[4] The record indicates that Mr. Levy presented a January 2009 notice of rent increase during the first and second appeal to RHC.  Mr. Levy also asserts that he presented the RHC with an October 2007 notice of rent increase in the second appeal, though the record does not appear to support that assertion.  The record does reflect, however, that Mr. Levy mailed the October 2007 notice to the ALJ about four months after the July 2007 evidentiary hearing.  Mr. Levy has not argued, here or at any stage of the administrative proceedings, that the ALJ should have considered the October 2007 notice as evidence of Mr. Levy's damages -- indeed, Mr. Levy sent the document in an effort to impeach testimony by one of Quarry's witnesses on an unrelated matter not raised in this appeal.  Nor has Mr. Levy argued at any stage of the proceedings that the ALJ should have considered the October 2007 notice as properly admitted evidence.  Rather, Mr. Levy notes in this court that he would need to admit this evidence "for the first time" if he were afforded an additional evidentiary hearing, and that the RHC should have considered this new evidence on appeal.

The RHC's unwillingness to consider the new information presented by Mr. Levy on appeal was supported by the plain language of 14 DCMR § 3807.5. *Cf., e.g.*, *Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 960 A.2d 603, 612-13 (D.C. 2008) (agency's refusal to consider new evidence on review not abuse of discretion). It is true that Mr. Levy was proceeding pro se before the RHC. We have noted that in some circumstances "special care" may be warranted before rigidly enforcing procedural rules in cases involving pro se litigants. *MacLeod v. Georgetown Univ. Med. Ctr.*, 736 A.2d 977, 980 (D.C. 1999). We have also noted that "it is appropriate . . . to keep in mind the remedial character of the [Rental Housing Act] and the important role which lay litigants play in its enforcement." *Goodman v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 1293, 1299 (D.C. 1990). In the present case, however, we do not see the kind of "manifest injustice" that would raise concerns about the RHC's enforcement of its procedural rules. *Id.* at 1303.

In finding no manifest injustice, we note that it is undisputed that Mr. Levy's apartment meets the requirements of D.C. Code § 42-3502.05 (a)(2) and thus in principle could be subject to an exemption from rent control. Moreover, Mr. Levy in fact was given notice of the claim of exemption before Quarry attempted to raise the rent on Mr. Levy's apartment. Finally, Mr. Levy apparently was a month-to-

month tenant at the time of the attempted rent increase, and thus would have had information about the exemption before deciding each month whether to renew as a tenant. Although we uphold the RHC's determination that Quarry's failure to provide timely notice of the claim of exemption renders the claim void, we note that Quarry's failure does not appear to have substantially prejudiced Mr. Levy. But for that failure, it appears that Mr. Levy lawfully could have been required to pay increased rent beginning in 2006.[5] Therefore, we see no manifest injustice in limiting Mr. Levy's recovery to the period up to July 2007, which is the amount Mr. Levy properly established under the RHC's reasonable procedures.

## 3.

Finally, Mr. Levy argues that the RHC's refusal to consider new evidence on appeal or to afford him a chance to present new evidence to the ALJ violated his

---

[5] In his reply brief, Mr. Levy contends that D.C. Code § 42-3502.05 (d) precludes a unit from being exempted from rent control in the middle of a tenancy where the tenant was not notified of the exemption before the execution of the original lease. If Mr. Levy's contention were correct, Mr. Levy might have been entitled to a rent-controlled rate for the duration of his tenancy. Mr. Levy's contention on this point, however, was not decided on the merits by the RHC and was not raised in this court until Mr. Levy's reply brief. Moreover, it is not at all clear that Mr. Levy's contention is correct as a matter of law. Under the circumstances, we cannot say it would work a manifest injustice to apply RHC's procedural rules to Mr. Levy in this case, particularly given Mr. Levy's apparent status as a month-to-month tenant.

constitutional due-process rights. The RHC responds that Mr. Levy did not preserve this claim because he did not raise it in his second appeal to RHC. Mr. Levy counters that he did not need to preserve his constitutional claim because the RHC would have lacked authority to decide the claim in the first instance. We need not decide these issues. As we have already explained, the RHC's procedures provide ample opportunity for tenants to prove up the full measure of their damages. Those procedures thus satisfy the requirements of due process.

## III.

For the foregoing reasons, the decision of the Rental Housing Commission is

*Affirmed.*