Steve LONEY, Petitioner,

and

Tenants of 710 Jefferson Street, N.W.,
Intervenors/Cross–Petitioners,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

Nos. 08–AA–1203, 08–AA–1603.

District of Columbia Court of Appeals.

Argued May 11, 2010.
Decided Sept. 23, 2010.

Roger D. Luchs with whom Richard W. Luchs, Washington, DC, was on the brief, for petitioner Loney.

Julie H. Becker and Eric R. Haren with whom Peter G. Wilson, Bonnie I. Robin–Vergeer, Paul M. Smith, Washington, DC, and Melissa A. Cox, were on the brief, for intervenors/cross-petitioners.

Richard S. Love, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Attorney General, and Mary T. Connelly, Assistant Attorney General, were on the brief, for the District of Columbia Rental Housing Commission.

Before RUIZ and OBERLY, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

Steve Loney filed a petition for substantial rehabilitation of his property at 710 Jefferson Street, Northwest. After several administrative hearings, the hearing examiner of the Housing Regulation Administration, Rental Accommodations and Conversion Division, granted the petition. The tenants appealed the decision of the hearing examiner to the District of Columbia Rental Housing Commission (hereinafter, the "Commission"). The Commission reversed and vacated the petition, finding, among other things, that there was not substantial evidence to support the decision of the hearing examiner. The Commission also awarded attorney's fees to the tenants for work performed before the Commission. Loney filed the instant petition for review, contending that the Commission made several errors in its decision to deny his rehabilitation petition, including its finding that there was not substantial evidence to support the petition. The tenants cross-petitioned, alleging that the Commission erred in its calculation of attorney's fees, first by finding that it lacked jurisdiction to determine fees for work performed before the hearing examiner and second by rejecting the hourly rate the tenants requested. We conclude that the Commission did not err in finding that there was not substantial evidence to support the decision of the Hearing Examiner granting Loney's petition for substantial rehabilitation. We, therefore, do not reach Loney's other challenges to the ruling of the Commission. We remand to the Commission on the issue of attorney's fees.

## I.

On August 6, 2004, Loney filed a petition for substantial rehabilitation of his fourteen-unit apartment building pursuant to 14 DCMR § 4212 (2004), and D.C.Code § 42–3502.14 (2001). He proposed renova-

tions to the building with a projected cost of $141,800. His proposed renovations—detailed in a memorandum from an architect—included replacing the roof, updating the electrical system, refinishing the floors, painting, and replacing all fixtures and appliances in the kitchens and bathrooms of the units. He additionally submitted to the hearing examiner cost estimates for the work to be done and provided testimony from a roofing consultant and an electrical contractor.

On July 28, 2005, a hearing examiner with the Department of Consumer and Regulatory Affairs, Housing Regulation Administration, granted the petition for substantial rehabilitation. She found that Loney presented sufficient documentation of the rehabilitation, that it was in the interests of the tenants, and that it met the requirements of the D.C.Code and the D.C. Municipal Regulations for such petitions. The tenants then appealed to the Commission.

On September 3, 2008, the Commission reversed the decision of the hearing examiner and denied the petition. The Commission ruled that the hearing examiner erred in concluding that the petition met the definition of "substantial rehabilitation"; the Commission found that the petition lacked critical information regarding the proposed work.[1] The Commission determined that Loney's failure to submit

necessary documentation and carry his burden of proof justified outright denial of the petition rather than reversing and remanding the hearing examiner's decision for further proceedings.

## II.

### The Commission's Denial of the Petition

■ In the petition for review before us, Loney challenges the Commission's holding that "the hearing examiner's finding that [Loney] submitted a detailed list of renovation costs is inaccurate, incomplete, conclusory and not supported by substantial evidence in the record" and that "the Hearing Examiner erred in concluding that the renovation is in the interest of the tenants[.]" We sustain this determination by the Commission for the reasons stated below.

■ In reviewing a decision of an administrative agency, this court considers whether there is substantial evidence in the record to support each of the findings, and whether the decision is in any way arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* D.C.Code § 2–510 (2001); *Cohen v. Rental Hous. Comm'n*, 496 A.2d 603, 605 (D.C.1985). This court gives great deference to the agency's interpretation of statutes and regulations which it

---

1. The Commission also ruled that the hearing examiner erred by allowing a rent adjustment of 125% where Loney failed to prove what the new rent amounts for each apartment should be; failing to dismiss the petition because of Loney's failure to provide a loan agreement and interest rate information; concluding that the renovation was in the interest of the tenants in light of substantial, conflicting evidence and without issuing findings of fact; and finding that it was "uncontested" that Loney had not yet begun renovation of the building. The Commission sustained one finding of the hearing examiner challenged by

the tenants—that for purposes of determining whether the "cost of the proposed rehabilitation equals or exceeds fifty percent (50%) of the assessed value of the rental unit or housing accommodation[,]" 14 DCMR § 4212.8(b), a housing provider who files a petition within the sixty days between the end of one tax year and the commencement of the next tax year can select either the tax year of the filing date or the succeeding tax year. Because we affirm the Commission's ruling on the "substantial rehabilitation" issue, we need not review these rulings by the Commission.

administers, and will reject the agency's interpretation only if it is plainly wrong or incompatible with the statutory purposes. *See Tenants of 738 Longfellow St., N.W. v. District of Columbia Rental Hous. Comm'n,* 575 A.2d 1205, 1213 (D.C.1990).

The statute that allows for substantial rehabilitation petitions provides, in part:

(a) If the Rent Administrator determines that (1) a rental unit is to be substantially rehabilitated, and (2) the rehabilitation is in the interest of the tenants of the unit and the housing accommodation in which the unit is located, the Rent Administrator may approve, contingent upon completion of the substantial rehabilitation, an increase in the rent charged for the rental unit, if the rent increase is no greater than the equivalent of 125% of the rent charged applicable to the rental unit prior to substantial rehabilitation.

D.C.Code § 42–3502.14(a). The D.C. Municipal Regulations detail what information a housing provider "shall include" with the petition:

(a) Detailed plans, specifications and projected cost of the proposed rehabilitation;

(b) Documentation of the assessed value of the housing accommodation as determined by the D.C. Department of Finance and Revenue for real estate taxation purposes for the tax year beginning no later than sixty (60) days after the date on which the petition is filed; and

(c) A schedule showing all rental units in the housing accommodation to be rehabilitated showing whether the rental unit is vacant or occupied and, if vacant, the date and cause of its vacation.

14 DCMR § 4212.2. The regulation details the supporting documentation a housing provider must provide and what standards must be met for a petition to be approved.[2] The purpose of requiring supporting documentation is to allow the hearing examiner to carefully consider whether the requirements of the statute are met: in particular that the proposed renovations amount to at least 50% of the assessed value of the housing accommodation and the rehabilitation is in the "interest" of the tenants. *See* 14 DCMR § 4212.8.

In support of his claim, Loney provided the hearing examiner with a memorandum from an architect, Mr. Jordan, that itemized the proposed rehabilitation as follows: replacing all existing electrical fixtures and replacing the electrical system in the building; replacing all bedroom, bathroom, and closet doors; replacing entrance doors to units as needed; replacing all door locks; repairing all walls and ceilings as needed; sanding and re-finishing all hardwood floors; installing ceramic tile floors in kitchen and bathroom; replacing all kitchen appliances (and specifying stoves and refrigerators); replacing all window air conditioner units; replacing all kitchen cabinets, sinks, and faucets; replacing bathroom vanity sinks and faucets; replacing bathroom medicine cabinets; painting the apartments; and replacing the roof of the building. Jordan's memorandum estimated that the work would cost: $18,000 for a new roof, $44,000 to upgrade the electrical system, and $5,700 to renovate each apartment. Jordan did not testify; however, Loney testified that he did not itemize renovation costs for each apartment unit, and the cost of

---

**2.** The Commission also found error in Loney's failure to provide a vacancy schedule and a validly issued building permit with his petition. Loney argues that the regulation does not require that a housing provider provide documentary support of occupancy/vacancy or a building permit. We do not address the Commission's determination that these are required documents.

$5,700 per apartment represented the average cost of materials and labor required by the scope of the work, and that his cost estimates were based on wholesale prices from different vendors and his professional experience as a construction and home improvement specialist. Loney submitted an exhibit similar to Jordan's memorandum that calculated the cost of construction would total $141,800, consisting of: $18,000 for a new roof, $44,000 to upgrade the electrical service, and $79,800 for renovation of the apartments ($5,700 for each of fourteen apartments). The total amount of $141,800 exceeded 50% of the 2004 tax assessment of $226,780.

Loney also introduced testimony from a roofing consultant and an electrical contractor. The roofing consultant testified that the roof, roof deck, and support framing of the building were in sufficiently poor condition that they required replacement rather than continuing repair. The electrician testified that the electrical system of the building was outdated and unsafe for the tenants and required upgrading, and also provided a written estimate of the cost of the work: $44,500 for installation of meters, switches, panels, lighting, wiring, outlets, and fixtures throughout the apartment building.

Ten tenants testified in opposition to the petition that the rental units shared varying degrees of the problems included in Loney's proposal. They disputed Loney's claims that all of the apartments contained the same types of physical deterioration and required the same comprehensive scope of work, and that substantial rehabilitation of each unit would more effectively address the problems than individualized repair and maintenance of each unit. An expert witness for the tenants testified that further testing of the roof was required in order to make the decision regarding replacement or repair, and that the roofing report provided by Loney was general in scope and lacked the technical data needed to determine the specifications and cost of roofing materials.

In *738 Longfellow St.*, we addressed in some detail the requirement that the proposed substantial rehabilitation be in the "interest of the tenants." *See Longfellow*, 575 A.2d 1205. In that case, we considered the 1986 regulation, the literal interpretation of which would have required a finding that "the present conditions of the dwelling *in fact* endanger the health, welfare and safety of the tenants and that such conditions cannot be corrected by maintenance or capital improvements." *Id.* at 1213 (emphasis in original). We held instead that this language was a factor—indeed "one of the Rent Administrator's principal areas of inquiry"—when considering a petition, but not an absolute requirement. *Id.* The amended (1989) version of the regulation is in effect today, and, like our reading of the 1986 regulation in *738 Longfellow St.*, it states that the test is "whether a proposed substantial rehabilitation is in the interest of the tenant," and that the rent administrator may consider the following:

(a) The existing physical condition of the rental unit or housing accommodation as shown by reports or testimony of D.C. housing inspectors, licensed engineers, architects and contractors, or other qualified experts;

(b) Whether the existing physical condition impairs or tends to impair the health, safety or welfare of any tenant;

(c) Whether the existing physical conditions can be corrected by improved maintenance, repair or capital improvement; and

(d) The impact of the proposed rehabilitation on the tenant or tenants in terms of proposed financial cost, inconvenience or relocation.

14 DCMR § 4212.9. Because the court in *738 Longfellow St.* interpreted the standard set forth in the 1986 regulation to be virtually the same as that of the 1989 regulation, we conclude that the reasoning of the previous case is applicable to the standard set forth in the 1989 regulation. In particular, we observed in *738 Longfellow St.* that

> Although a showing of present danger to health, safety and welfare, not remediable by lesser measures, is not indispensable to the owner's case, the statute does not authorize substantial rehabilitation leading to higher rents for optional or cosmetic changes which will render the property more attractive, but which will ultimately result in the replacement of tenants of low or moderate income by a more affluent clientele.

575 A.2d at 1214. The agency has followed this guideline in determining what proposed rehabilitation is merely cosmetic or necessary.

For instance, in another case, an administrative law judge found that such proposed improvements as replacing deteriorated carpentry, installing new windows and doors, repainting, and replacing plumbing and bathroom fixtures was "not necessary for tenant health and safety" but would provide significant benefits to the tenants. *See Sister Rule Properties v. Tenants of 1940 Biltmore St., N.W.,* RH–SR–07–20110, 2008 D.C. Off. Adj. Hear. LEXIS 27 at 6–7 (Jan. 11, 2008). In contrast, the ALJ also found in that case that the installation of wine coolers, decorating the lobby, and installing additional baths in some units would not provide a significant benefit for the tenants. *Id.* at 7–8. The ALJ noted that the wine coolers are "luxury item[s] inconsistent with the needs or expectations of the majority of tenants in the Building." *Id.* at 7. After considering whether each of the proposed renovations

was in the interest of the tenants, the ALJ calculated the total cost of renovations that were in the tenants' interest, and determined that this total exceeded 50% of the value of the property. *See id.* at 11; 14 DCMR § 4212.8(b).

Our case law and prior decisions of the agency make clear that the hearing examiner must carefully consider each proposed improvement and must determine whether it is in the interest of the tenants. Focusing on the proposed improvements to the individual units, the Commission concluded that the hearing examiner failed to meet that standard. As discussed *supra,* Loney provided documentation that specified the average cost of renovating the rental units, but he did not provide evidence of the specific problems, if any, existing in each unit in order to disprove the tenants' contention that much of the proposed work was not needed. The Commission found that the record included "considerable conflicting testimony" on whether the proposed renovations were necessary for, and applicable to, every rental unit, whether major items were required by the physical deterioration of each unit or were merely optional for each unit, whether the housing provider had already completed a permanent repair of some of the items or whether such repairs were merely "temporary fixes," and whether the documentation addressed the claims raised by the tenants at the hearing that many of the items were optional.

On this record, we cannot say that the Commission erred in concluding that Loney failed to provide adequate documentation, with respect to the improvement to the individual units, to meet his burden under the statute. Because the Commission disallowed the proposed expenditure for the individual units, the total cost of construction fell well short of the 50% threshold. We are satisfied that the Com-

mission did not err in concluding that the decision of the hearing examiner was not supported by substantial evidence, and that these conclusions warranted the denial of the petition for substantial rehabilitation.

### Attorney's Fees

The tenants filed a cross-petition in this case, in which they argue that the Commission erred in its determination that it did not have authority to grant attorney's fees for the work performed before the hearing examiner, and in its rejection of the hourly rate proposed by the tenants. We agree that the Commission erred on both issues.

*Fees for Work Before the Hearing Examiner*

■ The tenants filed a motion for reasonable attorney's fees and supporting memorandum, pursuant to D.C.Code § 42–3509.02, and 14 DCMR §§ 3825.1 to -.12, with the Commission on October 7, 2008, subsequent to the Commission's decision to deny the substantial rehabilitation petition. The Commission found that the tenants were entitled to attorney's fees under the D.C.Code provision, which creates a presumptive award of attorney's fees for "prevailing tenants in *both* tenant-initiated and landlord-initiated proceedings." *See Hampton Courts Tenants' Ass'n v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 10, 13 (D.C.1990) (emphasis in original). The Commission awarded attorney's fees to the tenants for work performed before it. It determined, however, that it was without jurisdiction to consider attorney's fees for work performed before the hearing examiner unless the tenants had raised the issue before the hearing examiner and then the issue was appealed to the Commission.

The tenants argue that the Commission erred as a matter of law: that it does, in fact, have jurisdiction to grant attorney's fees for work done at administrative hearings, and that they were not required to raise the issue of entitlement to a fee award before the hearing examiner until they prevailed before the Commission. We have previously remanded cases to the Commission to determine attorney's fees for work performed before the hearing examiner and the Commission. *See Alexander v. District of Columbia Rental Hous. Comm'n,* 542 A.2d 359, 361 (D.C. 1988) ("With respect to ... (administrative litigation fees), we think that the determination of such fees is, in the first instance, to be made by the Commission acting within its sound discretion in light of this opinion."). The statute that creates the presumption of attorney's fees states that the "Rent Administrator, Rental Housing Commission, or a court of competent jurisdiction may award reasonable attorney's fees to the prevailing party in any action under this chapter...." D.C.Code § 42–3509.02. The statute does not specify that each entity can only award attorney's fees for work done before it; instead it indicates that the listed entities can grant attorney's fees for "any action under this chapter."

We need not, however, determine whether the Commission's interpretation of the statute is a permissible reading. In their motion for attorney's fees, the tenants noted that on October 1, 2006, the Office of Administrative Hearings assumed jurisdiction over all administrative proceedings previously adjudicated before hearing examiners in the Rental Accommodations and Conversion Division (RACD). *See* D.C.Code § 2–1831.03 (Supp.2005). The tenants argued that as a result, there was no way for the Commission to remand the action to the original hearing examiner or to the RACD. On remand, the Commission should either de-

cide the fee issue itself or it can remand to an appropriate hearing officer within the Office of Administrative Hearings to determine attorney's fees for the work performed before the original hearing examiner. We agree with the tenants that they could not have raised the issue previously (before the hearing examiner or in their appeal to the Commission) because they were not the prevailing party until the Commission had ruled in their favor. Consequently, they did not waive the issue and should not be prevented from recovering attorney's fees on the basis that the Commission does not have jurisdiction.

*Hourly Rate*

 The tenants additionally argue that the Commission erred in rejecting their proposed hourly rate, based on the Laffey Matrix, to determine the fees for the work performed, and instead applying the Equal Access to Justice Act (EAJA) to determine the fees. After calculating the number of hours,[3] beginning with the "lodestar" method and adjusting based on the factors described in 14 DCMR § 3825.8(b), the Commission determined the appropriate hourly rate. *See Tenants of 710 Jefferson St., N.W. v. Steve Loney,* Order on Motion for Attorneys' Fees, District of Columbia Rental Housing Commission (Dec. 10, 2008). The Commission acknowledged, and Loney did not contest, the rate proposed by the tenants: $225 per hour, based on their attorney's own experience. The tenants also argued that the Laffey Matrix, "a fee schedule prepared by the Civil Division of the United States Attorney's Office for the District of Columbia for use in calculating fee awards for government attorneys" that provides hourly rates for attorneys with various levels of experience, is based on "prevailing market rates" in the District of Columbia and may be used in the District of Columbia to calculate fees for attorneys performing work on a pro bono basis. *See* Tenants'/Appellants' Motion for Reasonable Attorney's Fees at 5, citing *Covington v. District of Columbia,* 313 U.S.App.D.C. 16, 24, 57 F.3d 1101, 1109 (1995). *See also Lively v. Flexible Packaging Ass'n,* 930 A.2d 984, 988 (D.C.2007).

Notwithstanding the tenants' claims, the Commission applied the fee provision in the federal EAJA. Its only rationale for rejecting the Laffey Matrix in favor of the EAJA is that it "has traditionally used the fee provision" in the latter. The Commission stated that the "determination of the amount of reasonable attorney's fees is committed to the discretion of the Commission." *See* Order on Motion for Attorneys' Fees, *supra,* at 6. We conclude, however, that where Loney did not propose an alternative hourly rate and the Commission's only justification for substituting its own rate is that it "has traditionally used" that rate without any consideration of the *Frazier* factors,[4] the rejection of the tenants' proposed rate constituted an abuse of discretion.

Accordingly, we affirm the Commission's determination that Loney failed to establish that his petition for substantial rehabilitation should have been granted and we remand for further consideration of the tenants' proposed hourly rate for attorney's fees in light of this opinion, and to provide the tenants with an opportunity in which to present their claim for attorney's fees for work performed before the hear-

---

3. The tenants do not contest the Commission's calculation of the number of compensable hours.

4. *See Alexander, supra,* 542 A.2d at 361 n. 8, citing *Frazier v. Franklin Inv. Co.,* 468 A.2d 1338, 1341 n. 2 (D.C.1983).

ing examiner.[5]

*So ordered.*

---

5. We note that the tenants could provide more evidence to support the Laffey Matrix as the appropriate rate—for example, expert testimony or affidavits regarding rates charged by attorneys for similar work in the District of Columbia.