*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-351

ROY L. PEARSON, JR., PETITIONER,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, RESPONDENT,

and

GARDENIA BROWN, INTERVENOR.

Petition for Review of Orders of the
District of Columbia Rental Housing Commission
(RH-TP-14-30,482, 14-30,555)

(Submitted February 11, 2021                    Decided March 3, 2022)

*Roy L. Pearson, Jr.*, pro se.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time the statement was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, filed a statement in lieu of brief.

*Dorene Haney* for intervenor.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*:    Petitioner Roy L. Pearson, Jr. filed administrative petitions against his landlord, intervenor Gardenia Brown.  Mr.

Pearson seeks review of decisions of the District of Columbia Rental Housing Commission (RHC) granting him some but not all of the relief he sought. Mr. Pearson argues that the RHC erroneously affirmed decisions of the Office of Administrative Hearings (OAH) (1) limiting Mr. Pearson's damages to rent amounts illegally demanded within three years of the filing of his petitions; (2) declining to award treble damages; and (3) refusing to permit additional evidence of damages that accrued after the close of an evidentiary hearing. We affirm.

## I.

Unless otherwise noted, the following appears to be undisputed. Mr. Pearson began renting from Ms. Brown in 1999, at a monthly rate of $585. Although Ms. Brown had previously claimed an exemption from the rent-control statute, she did not provide Mr. Pearson with a copy of the exemption form at the beginning of his tenancy. In 2010, Ms. Brown filed a new claim of exemption, which she also did not provide to Mr. Pearson. During the rental period, Ms. Brown raised the rent multiple times. In 2014, Mr. Pearson filed petitions asserting, among other things, that Ms. Brown did not have a valid claim of exemption from the rent-control provisions of the Rental Housing Act of 1985 (RHA), D.C. Code § 42-3501.01 et

seq. (2020 Repl.), and that Ms. Brown had failed to comply with the RHA's rent-control provisions when raising Mr. Pearson's rent.

An Administrative Law Judge (ALJ) held an evidentiary hearing. At the evidentiary hearing, Mr. Pearson asked that the record be kept open until right before the ALJ ruled, so that Mr. Pearson could provide proof of additional damages resulting from Ms. Brown's continuing illegal rent demands. The ALJ denied that request. Mr. Pearson subsequently renewed the request, which was again denied. In denying the request, the ALJ explained that Mr. Pearson could file a new petition to prove damages that occurred after the date of the evidentiary hearing. The ALJ also stated that Mr. Pearson had been given the opportunity to amend his pending petitions to add claims relating to continued illegal rent demands, but Mr. Pearson had declined to do so.

On the merits, the ALJ determined that Ms. Brown's claim of exemption from rent control was void ab initio, because Ms. Brown did not provide Mr. Pearson with notice of her exemption from rent control at the beginning of his tenancy or when she filed for another exemption in 2010. Accordingly, the ALJ found that all rent increases Ms. Brown took or demanded were invalid. The ALJ determined, however, that the RHA's statute of limitations (D.C. Code § 42-3502.06(e) (2020

Repl.)) prevented Mr. Pearson from obtaining relief with respect to rent increases occurring more than three years before Mr. Pearson filed his petitions. Because Mr. Pearson's monthly rent at the time he filed his petitions was $949, the ALJ (1) ordered Ms. Brown to refund Mr. Pearson any rent over that amount that Ms. Brown had demanded during the three years before Mr. Pearson's petitions; and (2) reduced Mr. Pearson's monthly rent to $949 until Ms. Brown took a legal rent increase. The ALJ declined to order award treble damages, concluding that Ms. Brown had not acted in bad faith.

The RHC affirmed.

## II.

This court will not disturb [the] RHC's factual findings unless they are unsupported by substantial evidence in the record. We also give considerable deference to the RHC's interpretation of the statutes it administers and the regulations it promulgates[, and] we will sustain the RHC's interpretation of those statutes and regulations unless it is unreasonable or embodies a material misconception of the law, even if a different interpretation also may be supportable. We are the final arbiter of the meaning of our case law, but to the extent that the RHC has used our case law to assist it in interpreting ambiguities in the RHA and implementing regulations, we continue to defer to the RHC in its exercise of statutory interpretation.

*United Dominion Mgmt. Co. v. District of Columbia Rental Hous. Comm'n*, 101 A.3d 426, 429 (D.C. 2014) (citations and internal quotation marks omitted).

**A.**

Mr. Pearson argues that he should have been awarded damages in the amount of all rent that Ms. Brown demanded during Mr. Pearson's entire tenancy. Mr. Pearson's theory in support of that argument is that Ms. Brown never validly requested exemption from rent control during Mr. Pearson's tenancy; all of Ms. Brown's demands for rent therefore were unlawful; and the lawful monthly rent therefore was $0. The RHC did not accept that argument, concluding, among other things, that Mr. Pearson had not timely presented the argument to the ALJ. We uphold the RHC's timeliness ruling.

Mr. Pearson initially sought damages in the amount of all rents demanded above $585 per month, which was the rental amount at the beginning of his tenancy. It appears that Mr. Pearson did not explicitly indicate that he was seeking damages in the amount of all of the demanded rent until (at the earliest) March 2016, which was over two years after he filed his petition and over seventeen months after the ALJ held an evidentiary hearing and closed the record in the case.

Mr. Pearson argues that he did timely raise the issue before the ALJ, in the initial petition and in filings in March and August of 2014. We disagree. In none of those filings did Mr. Pearson explicitly indicate that he was claiming that the lawful monthly rent was $0. To the contrary, Mr. Pearson's petition requested that the lawful monthly rent be determined to be $585, and his August 2014 pre-hearing filing made the same request. The March 2014 filing was a motion to compel discovery, and it raised the possibility that the lawful monthly rent might be lower than $585. That discovery motion was granted in part and denied in part, and Mr. Pearson has not challenged that ruling in this court. Thereafter, Mr. Pearson continued to argue that the lawful monthly rent should be $585.

Given those circumstances, we see no basis to overturn the RHC's conclusion that Mr. Pearson did not properly preserve his contention that the lawful monthly rent was $0. "In the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time." *Goodman v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 1293, 1301 (D.C. 1990). We see no such exceptional circumstances here.

**B.**

Mr. Pearson argues that the RHC erred by limiting his damages to rent increases unlawfully demanded within three years of the filing of Mr. Pearson's petitions. We uphold the ruling of the RHC.

D.C. Code § 42-3502.06(e) provides in pertinent part that a "tenant may challenge a rent adjustment implemented under any section of this chapter by filing a petition . . . . No petition may be filed with respect to any rent adjustment . . . more than 3 years after the effective date of the adjustment." The RHC ruled that Mr. Pearson was precluded by this provision from challenging rent increases that occurred more than three years before the filing of his petitions, because the term "effective date" means the date on which a rent increase is implemented, whether or not the landlord had properly claimed exemption from rent control.

The RHC's ruling finds substantial support in our decision in *United Dominion*, 101 A.3d at 431-33. In that case, this court upheld the RHC's determination that, for purposes of the RHA's statute of limitations, the effective date of a rent adjustment is "the date on which a landlord issues a notice to the tenant that it is increasing the rent charged," even if the increase was not legally permissible

at the time the tenant was notified. *Id.* at 431. In our view, the RHC's decision in this case is a reasonable application of the principle upheld in *United Dominion*.

We are not persuaded by Mr. Pearson's arguments to the contrary. First, Mr. Pearson argues that unlawful rent increases cannot properly be viewed as "rent adjustments" within the meaning of § 42-3502.06(e). That argument, however, is flatly inconsistent with the holding of *United Dominion*.

Second, Mr. Pearson argues that this case is different from *United Dominion*, because the RHC in this case determined that Ms. Brown's claim of exemption from rent control was void ab initio, whereas *United Dominion* involved untimely registration of rent-ceiling increases. We do not agree that this difference required the RHC to permit Mr. Pearson to recover damages for rent that was demanded more than three years before Mr. Pearson's petitions. It is true that items deemed to be void ab initio are often treated as if they never existed. *E.g.*, *Wagshal v. Selig*, 403 A.2d 338, 341 (D.C. 1979). That is not a flat rule, however. *See, e.g.*, *Brown v. M St. Five, LLC*, 56 A.3d 765, 779 (D.C. 2012) ("[I]n some cases, the conclusion that a contract is void ab initio does not absolve the party who executed the contract on behalf of the nonexistent corporation of the obligations arising thereunder.").

In limiting Mr. Pearson's recovery in this case, the RHC interpreted the three-year statute of limitations in § 42-3502.06(e) to broadly "prohibit petitions against rent levels put in place more than three years prior to the petitions' filing." In support of that conclusion, the RHC relied on this court's decision in *Kennedy v. District of Columbia Rental Hous. Comm'n*, 709 A.2d 94, 96-99 (D.C. 1998). In *Kennedy*, we upheld the RHC's "logical and not unreasonable reading of the purpose underlying [the provision now codified at § 42-3502.06(e)]: to simplify rent control litigation by confining the inquiry to the three year period immediately preceding the commencement of a tenant action, thus relieving the agency of the onerous administrative burdens imposed under pre-existing law." *Id.* at 99-100. That principle can reasonably be applied to cases, such as this one, in which the landlord had failed to file a proper claim of exemption from rent control. *See Nelson v. District of Columbia Rental Hous. Comm'n*, 184 A.3d 864, 866-67 (D.C. 2018) (RHA's statute of limitations also applies to claims resting on improper filing of rent-ceiling adjustments; "the statute of limitations exists to preclude merits arguments, no matter their basis").

For the foregoing reasons, we conclude that Mr. Pearson has not demonstrated that the RHC's application of § 42-3502.06(e) in this case was "unreasonable or embodies a material misconception of the law." *United Dominion*, 101 A.3d at 429.

**C.**

Mr. Pearson argues that the RHC erred by failing to award him treble damages under D.C. Code § 42-3509.01(a) (2020 Repl.), which provides for treble damages if a landlord demands excessive rent knowingly and in bad faith. We affirm the RHC's ruling.

In declining to award treble damages, the ALJ noted various definitions of "bad faith," including "the intent to deceive or defraud"; "the conscious doing of a wrong because of dishonest motive or moral obliquity"; "a deliberate refusal to perform without just . . . cause or excuse"; and "a continuing, heedless disregard of a duty." The ALJ then considered the circumstances of Ms. Brown's demanding of illegal rent during the period at issue. In sum, the ALJ concluded that Ms. Brown had not acted in bad faith for four reasons. First, Ms. Brown did not know that her conduct was unlawful. Second, Ms. Brown's rent increases were not prompted by a bad motive but rather reflected a desire to recoup expenses and charge a market rate. Third, although Mr. Pearson did eventually notify Ms. Brown of Mr. Pearson's claim that the rent increases were illegal, Ms. Brown essentially ignored Mr. Pearson's communications on the point, because (a) by that point the relationship between the two had become very contentious, (b) the communications "contained insulting

language and [Ms. Brown] felt bullied and intimidated" by Mr. Pearson's repeated and lengthy communications, and (c) the communications included some legally incorrect claims. Fourth, under the circumstances, Ms. Brown's conduct, though imprudent, was not so culpable as to warrant an award of treble damages.

The RHC affirmed the ALJ's finding of no bad faith. The RHC explained that it would defer to the ALJ's ruling as long as that ruling was supported by substantial evidence. The RHC also noted multiple definitions of "bad faith," but explained that those definitions significantly overlap and do not all apply in all circumstances. In the context of the present case, the RHC concluded, the ALJ had appropriately inquired into whether Ms. Brown's conduct was "deceptive, fraudulent, interested, sinister, consciously wrong, morally oblique, or otherwise bad." The RHC then concluded that there was substantial evidence to support the ALJ's finding of no bad faith.

"We owe deference to the [RHC's] interpretation of bad faith in the specific context of the Rental Housing Act." *Bernstein Mgmt. Corp. v. District of Columbia Rental Hous. Comm'n*, 952 A.2d 190, 198 (D.C. 2008). Given that deference, we see no basis to reverse the RHC's decision affirming the ALJ's decision not to award treble damages. First, we view as reasonable the RHC's legal conclusion that "bad

faith" under the RHA can be defined in a variety of overlapping ways not all of which would necessarily be applicable in a given case. *Cf., e.g.*, *Allworth v. Howard Univ.*, 890 A.2d 194, 201-02 (D.C. 2006) (stating, in context of contract law, that "[t]he phrase 'good faith' is used in a variety of contexts, and its meaning varies somewhat with the context") (internal quotation marks omitted).

Second, Mr. Pearson contends that treble damages were required if Ms. Brown's conduct was "heedless." It is not clear that Mr. Pearson is correct on that point. *See, e.g.*, *Nelson*, 184 A.3d at 870 (in upholding RHC's refusal to award treble damages, court describes "bad faith" under RHA as "intent to misrepresent" and notes that RHC "applied this standard or one substantially similar to it") (ellipses omitted). In any event, the RHC reasonably explained that "heedless[ness]" in the present context should be viewed as equivalent to "malicious thought" or "recklessness." We think it clear that neither the ALJ nor the RHC viewed Ms. Brown's conduct as heedless in that sense.

Third, we conclude that the substantial evidence noted above supported the ALJ's conclusion that Ms. Brown did not act in bad faith. *Cf. Nelson*, 184 A.3d at 870-71 (RHC's refusal to award treble damages supported by evidence that landlord did not intend to deceive tenants).

**D.**

Finally, Mr. Pearson argues that the RHC erred by upholding the ALJ's refusal to permit Mr. Pearson to prove additional damages arising from Ms. Brown's continued unlawful demands for rent after the date of the evidentiary hearing. We see no basis for reversal in the circumstances of this case.

Mr. Pearson argues that the RHC's ruling in this case contradicts *Levy v. District of Columbia Rental Hous. Comm'n*, 126 A.3d 684 (D.C. 2015). We disagree. In that case, Mr. Levy challenged "the RHC's practice of limiting damages to the date of the last evidentiary hearing," arguing that the practice "prevents tenants from establishing the full measure of their damages in cases in which there is a delay between the evidentiary hearing and the ALJ's ruling." *Id.* at 692. We "uph[e]ld as reasonable the RHC's general approach of limiting damages to the date of the last evidentiary hearing." *Id.*; *see also Nelson*, 184 A.3d at 869 n.5 ("We have affirmed the [RHC's] practice of terminating refunds [as of the date of the last evidentiary hearing], even when a housing provider subsequently demands allegedly unlawful rent.").

We acknowledged in *Levy* that tenants would be entitled to recover damages that accrued after the close of the last evidentiary hearing.  126 A.3d at 692.  We explained, however, that tenants had ways to address that issue.  *Id.*  We noted two such approaches:  tenants "could request in advance that the ALJ convene a separate hearing on damages" or "could file a prompt motion to reopen the proceeding to more accurately establish damages."  *Id.*  We did not, however, require ALJs to follow either of those two illustrative approaches.  *Id.*

In the present case, the ALJ suggested two other approaches available to Mr. Pearson:  filing separate petitions challenging post-hearing damages or amending other pending petitions that he had filed against Ms. Brown to include such damages.  The RHC concluded that the ALJ's handling of this issue was not an abuse of discretion, given that Mr. Pearson had the option of amending other pending petitions to include post-hearing damages.

We review the RHC's ruling deferentially.  *See Levy*, 126 A.3d at 692 (reviewing for reasonableness RHC's decision to limit damages to date of last evidentiary hearing).  We conclude that the RHC reasonably held that the ALJ acted permissibly, by providing Mr. Pearson with the option of amending other pending petitions to include post-hearing damages.  Mr. Pearson objects to that alternative,

but he has identified no concrete prejudice he suffered as a result of the ALJ's ruling. To the contrary, Ms. Brown asserts that Mr. Pearson subsequently took that alternative and recovered post-hearing damages in connection with a different petition that Mr. Pearson had filed.  Mr. Pearson objects to that assertion, contending that the assertion rests on information outside the record in this case.  We need not address that issue.  Whether or not Mr. Pearson in fact has obtained post-hearing damages in connection with another petition, the RHC reasonably concluded that the availability of that alternative permitted the ALJ in this case to decline to expand the record in this case beyond the record at the close of the evidentiary hearing.

For the foregoing reasons, we affirm the orders of the RHC.

*So ordered.*